[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was commenced in 1997 by Jennifer Renard, individually, as Executrix of the Estate of David Renard, and as representative of the four children of Jennifer and David Renard. The numerous defendants include a law firm, several attorneys and the judge of the Probate Court for Redding, Connecticut. The substitute complaint, filed in 1999, contains eight counts and, broadly speaking, involves a series of complaints revolving around the life, treatment and assets of the late Betty Rosenthal, who was the mother of David Renard and mother-in-law of Jennifer Renard. More specifically, the complaint alleges mistreatment of Betty Rosenthal, improper disposition of her assets, interference with the business association and personal relations between Betty Rosenthal and David Renard, interference with David Renard's business, withholding of funds from the Estate of David Renard, and the wrongful death of David Renard.
The defendant, Michele Murphy, moves for summary judgment dismissing the complaint against her. The bases for the motion is that the allegations against her arise out of activities that took place while she was serving as Conservator of Betty Rosenthal and the Estate of Betty Rosenthal, appointed by Redding Probate Judge Richard Emerson.
The motion was initially filed on October 24, 2000. It came up on the calendar for argument in November, but was marked off. On October 30, 2000, the attorney for the plaintiff filed a motion for stay of proceedings. That motion stated that there had been a complete breakdown in communications with Jennifer Renard, a condition which has apparently existed for some time. The motion continued, however, that some contact had been established with a doctor for one or more of the Renard children, and efforts were being made to ascertain what their interest in this case was and to ascertain an address for Jennifer Renard and the other two children. It was represented that the attorney had not been in contact with any of the plaintiffs for over two years.
The court record reflects that plaintiff's attorney has filed several motions for a stay and several motions to be relieved as counsel. With respect to the latter motions, no substitute counsel has been identified. The gravamen of these motions are consistent: the plaintiff is alleged to have suffered an emotional breakdown, has moved to CT Page 3689 Florida, and subsequently to England. It is also alleged that other legal representatives of Jennifer Renard and her children have blocked the attorney's attempts to contact them.
Murphy's summary judgment motion was rescheduled for argument on December 18, 2000. On that day, plaintiff's attorney reiterated the above circumstances and stated that there were no affidavits or other evidentiary matter available to oppose the motion.
At that time, the court instructed Renard's attorney to: (1) make additional attempts to contact her clients and specifically advise them of the pendency of the Murphy summary judgment motion and the potential consequences of not opposing it, (2) obtain affidavits and other evidentiary material available, and (3) submit papers in opposition to the motion by January 19, 2001.
On January 19, 2001, plaintiffs submitted an objection to the motion, stating that it was not possible to file affidavits and other documentation because there was no communication with the client. The objection further stated that an effort had been made to contact them by communicating with a solicitor in England who had represented them. The objection reiterated that there had been no client communication for two years.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Witt v. St. Vincent's Medical Center,252 Conn. 363, 368 (2000).
Practice Book § 17-45 states that a party opposing summary judgment shall file "opposing affidavits and other available documentary evidence." Practice Book § 17-47 deals with the circumstance of unavailable documents, and in such cases, requires a party opposing a summary judgment motion to present, in an affidavit, the reasons why facts and documents justifying opposition to the motion are not available or cannot be presented. In this case, the plaintiff has not complied with either Practice Book section. CT Page 3690
In Bartha v. Waterbury House Wrecking Co., 190 Conn. 8 (1983), the Connecticut Supreme Court stated that the party opposing summary judgment must set forth specific facts showing there is a genuine issue for trial and if no such response is forthcoming, the trial court "is entitled to rely upon the facts stated in the affidavit of the movant," Id. 11-12; see also Heyman Associates No. 1. v. Insurance Co. of Pennsylvania,231 Conn. 756, 795 (1995) ("Because the plaintiff moved for summary judgment . . . and there were no contradictory affidavits, the court properly decided the motion by looking only to the sufficiency of the plaintiff's affidavits and other proof."). In light of the circumstances set forth above including the additional time given to plaintiff to respond, the court will determine this motion on the papers submitted.
In support of her motion, Murphy submitted an affidavit providing evidence of the following. On June 19, 1991, the Redding probate court judge appointed Murphy as Conservator of the Estate and Person of Betty Rosenthal, a position she held until Ms. Rosenthal's death on June 24, 1993. According to judge's order, the appointment was made because of Rosenthal's loss of memory, judgment and communication, and her inability to provide for personal, physical and health needs. A bond for the conservator was set at $75,000. The petition of David Bernard to be conservator of Rosenthal was deemed not to be in the best interests of Rosenthal. In 1992, Judge Emerson gave authority to Murphy to sell Rosenthal's residence for some $430,000. Apparently, the sale was not consummated, and the real estate remained in the name of Rosenthal. Rosenthal died on June 24, 1993, and Murphy filed a final accounting for her conservatorship in November, 1993. Following a hearing, the detailed accounting was approved by Judge Emerson on December 2, 1993, and the conservator estate was transferred to the estate of Betty Rosenthal.
A careful reading of the substitute complaint shows a lack of any evidence that the alleged acts and omissions of Murphy occurred in her private capacity. Indeed, the very nature of the alleged wrongdoings, e.g., mismanagement of Rosenthal's assets, make it clear that the bases for the claims against Murphy arise solely out of her status as conservator. The well established rule is that:
 [t]he court, and not the conservator is primarily entrusted with the care and management of the ward's estate, and, in many respects, the conservator is but the agent of the court. . . .
 Under our law, it is clear that the conservator acts under the supervision and control of the Probate Court in the care and management of the ward's estate. CT Page 3691 (Citations omitted; emphasis in original; internal quotation marks omitted.)
Marcus' Appeal from Probate v. Department, 199 Conn. 524, 529 (1986). In this case, Judge Emerson approved Murphy's actions and approved the final accounting of her conservatorship. This approval had the effect of making Murphy an agent of the Probate Court. Id.; Elmendorf v. Poprocki,155 Conn. 115 (1967). The affidavit of Murphy indicates that all of her actions as conservator were within the bounds of her appointment, consistent with her statutory responsibilities, and approved by the Probate Court. As noted above, there is no evidence to the contrary.
The court finds that there are no material facts in dispute. The actions of Murphy which are complained of occurred while she was acting as a duly appointed Conservator of Betty Rosenthal and the Estate of Betty Rosenthal. Her actions and accounting were approved by the Probate Court. Thus, her actions were taken as an authorized agent of the Probate Court, and she cannot be held individually liable. Zanoni v. Hudon,48 Conn. App. 32, cert. denied, 244 Conn. 928 (1998) (citing Whitlock's,Inc. v. Manley, 123 Conn. 434 (1937)).
The motion for summary judgment by Michele Murphy is granted.
Adams, J.